

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
WIKKXXXXDSOON
ATTORNEY GENERAL

Honorable W. W. Roark, Chairman
Committee on Insurance
House of Representatives
Forty-ninth Legislature
Austin, Texas

Dear Mr. Roark:

Opinion No. 0-6590
Re: Effect of amendment eliminating
sentence in Section 3, Subdivi-
sion (c), S.B. No. 233, 49th Leg-
islature concerning rates on
insurance risks.

Your letter of May 10, 1945, requesting an opinion of this department reads as follows:

"Attached hereto is a copy of Senate Bill 233 as passed by both houses of the Legislature and finally signed by the Governor with the exception of the language underscored and set off in parentheses on lines 33, 34 and 35 on page 2 of the attached bill which was struck from the bill by amendment.

"In the past, certain companies writing fidelity and surety bonds have found that they could profitably write such bonds on certain classes of insureds, particularly bankers and contractors, at much lower rates than those set forth by different rating bureaus and proceeded to do so whereupon they became known as non-conference companies. By allowing certain experience credits and writing broader and more comprehensive forms of bonds, these companies have for several years been writing a great many such bonds in Texas.

"It was the intent of the author of the amendment and the intent of the Legislature in adapting the amendment herein referred to, that nothing in the act should be construed as to preventing the Board from approving different rates for risks in a given classification for different insurers or classes of insurers or, in other words, that the door to competition should be closed in the making of fidelity and surety bonds in this State.

"An opinion from your department is hereby requested at the earliest possible convenience as to whether or not the purpose of the amendment may be defeated by the remaining portions of the act or may be arbitrarily defeated by the Board by a declaration that the lowest rate submitted for any risk in a given classification shall be the rate that shall be used by all other companies for the same class of risk. An opinion as to the meaning of the entire act is also hereby requested."

In accordance with our views expressed to you orally concerning the above, we do not attempt to render any opinion as to the meaning of the entire Senate Bill submitted. The last sentence in your letter will therefore be disregarded as being too general in scope.

The caption of said Senate Bill No. 233 is entitled an Act authorizing the control by the Board of Insurance Commissioners of the State of Texas of the business of casualty, fidelity, surety and guaranty insurance. It provides, among other things, for the making, filing and approval or disapproval of rates, policies and forms relative thereto.

Section 2 of said Bill provides:

"All rates shall be made in accordance with the following provisions:

"1. Due consideration shall be given to the past and prospective loss experience within and outside the State, to catastrophe hazards, if any, to expenses of operation, to a reasonable margin for profit and contingencies, and to all other relevant factors, within and outside the State.

"2. Risks may be grouped by classifications for the establishment of rates and minimum premiums. Classification rates may be modified to produce rates for individual risks in accordance with rating plans which establish standards for measuring variations in such risks on the basis of any or all of the factors mentioned in the preceding paragraph.

"3. Rates shall be reasonable, adequate, not unfairly discriminatory, and non-confiscatory as to any class of insurer."

Section 3, Subdivisions (a), (b) and (c), with the

sentence, lines 33, 34 and 35 of Subdivision (c) and referred to by you, omitted, provides:

"(a)  Every insurer shall file with the Board every manual of classifications, rules and rates, every rating plan and every modification of any of the foregoing which it proposes to use.  Every such filing shall indicate the character and extent of the coverage contemplated and shall be accompanied by the policies and endorsement forms proposed to be used, and the information upon which the insurer supports the filing.

"The filings to be made in the first instance hereunder shall be made as and when, and in the manner the Board shall require after the effective date hereof, and after not less than ninety days written notice to the insurers affected, but in no case later than January 1, 1948.

"(b)  An insurer may satisfy its obligation to make such filings by becoming a member of, or a subscriber to, a licensing rating organization which makes such filings and by authorizing the Board to accept such filings on its behalf.

"(c)  Any filing made pursuant to this section shall be approved by the Board unless it finds that such filing does not meet the requirements of this Act.  As soon as reasonably possible after the filing has been made the Board shall in writing approve or disapprove the same; . . . ."

Section 7 provides that the Board shall promulgate reasonable rules and statistical plans, necessary to collect such data and experience information to enable it to determine whether rating plans comply with the standards set forth in Section 2 of the Act.  Section 8 prohibits rebating.

From section 3, Subdivision (c), the following sentence was eliminated by the amendment:

"The Board shall not approve different rates for risks in a given classification for different insurers or classes of insurers."

The very essence and purpose of every rule-making act, or order by whatsoever tribunal lawfully authorized thereto, is to secure rates that are fair and reasonable, and at the same time uniform in their application.  Obviously that is the purpose of the Act under consideration.

If Senate Bill No. 233, as amended in the particular hereinabove pointed out, should become a law, it is the opinion of this department the same would not authorize or permit the Board of Insurance Commissioners to establish or approve different rates for different insurers upon the same risk or risks. This would be to disregard the primarily-important reason for the existence of lawfully-established rates, amounting to a discrimination amongst insurers, which would make the Act obnoxious to familiar constitutional provisions.

It may be true, as you suggest, that the author of the bill and the Legislature in adopting the amendment excising the language above quoted intended that the Board might, in the exercise of its authority, approve different rates for risks in a given classification for different insurers or classes of insurers, but such purpose would hardly be imputed to the Legislature, if, as is the case we think, such a provision would render the Act, in that respect at least, unconstitutional and void. We do not mean to hold that conditions might not be such that a provision of that kind would be valid, but in order for it to be so, it would have to be based upon a proper classification of insurers, and nothing of that kind appears in the bill. It is fundamental that all statutes must, in order to be valid, operate uniformly upon all persons within the class contemplated thereby. There may be subclasses, of course, but they too must be based upon just and proper distinctions forming different sub-classes for the purpose of legal treatment.

The obvious urgency of reply because of the near adjournment of the session makes it impossible for us to elaborate our reasons for the opinion above expressed.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By s/Ocie Speer
    Ocie Speer
    Assistant

OS:MR:wc

APPROVED MAY 22, 1945
s/Grover Sellers
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/GWB Chairman